STATE of Utah, in the Interest of
N.H.B., a person under eighteen
years of age, Appellant.

No. 880160–CA.

Court of Appeals of Utah.

June 30, 1989.

Walter F. Bugden, Jr., Salt Lake City, for appellant.

R. Paul Van Dam, Sandra L. Sjogren, and David E. Yocom, Salt Lake City, for respondent.

## OPINION

Before BENCH, BILLINGS and GREENWOOD, JJ.

BENCH, Judge:

A juvenile accused of kidnapping and attempted homicide appeals the denial of his motion to "recall" juvenile court jurisdiction. He seeks reversal, remand for a new hearing, or a declaration that the statutory provisions for the divestment and recall of juvenile court jurisdiction are unconstitutional. We affirm the denial of his motion.

## FACTUAL BACKGROUND

Appellant N.H.B. was arrested in Salt Lake City on December 9, 1987, in connection with the kidnapping for ransom of the son of a prominent businessman and the near-fatal stabbing of an F.B.I. agent. At the time of his arrest, appellant was seventeen years of age. The county attorney elected to prosecute appellant as an adult under Utah Code Ann. § 78-3a-25(6) (1987), and filed an information in circuit court charging him with aggravated kidnapping and attempted criminal homicide.[1] The next day, appellant moved the juvenile court to recall jurisdiction under Utah Code Ann. § 78-3a-25(9) (1987) so he could be prosecuted as a juvenile. The day before the scheduled hearing on appellant's recall motion, appellant also moved the juvenile court to declare unconstitutional subsections (6) and (9) of section 78-3a-25.

A hearing on appellant's motion for recall was conducted on January 7-8, 1988, and witnesses testified on behalf of both parties. The juvenile court subsequently issued two memorandum decisions denying appellant's motions. Appellant then filed this appeal, and trial proceedings in district court were stayed pending disposition of the appeal.

## STATUTORY PROVISIONS

The relevant portions of subsections (6) and (9) of section 78-3a-25 provide:

(6) When a petition in the case of a person 16 years of age or older alleges any class of ... attempted criminal homicide ... or aggravated kidnapping, the juvenile is subject to the jurisdiction of this court under § 78-3a-16, unless ... a criminal information is filed by the county attorney, in which event this court is divested of jurisdiction under § 78-3a-16, the charge shall be made, and the proceedings regarding the charge shall be conducted in every respect as if the juvenile were an adult....

(9) The juvenile court regains jurisdiction under § 78-3a-16 and any authority which was previously exercised over the juvenile when: ... (c) the juvenile court judge files a request for a return of jurisdiction in the court where the allegations are pending. ... Upon receipt of the request, jurisdiction vests with the juvenile court. The child or his guardian may move the juvenile court to recall jurisdiction by filing a motion and requesting a hearing before a juvenile

---

1. Federal charges stemming from the assault on the F.B.I. agent were filed and later dismissed.

court judge. The motion shall be filed and hearing held within ten calendar days from the date of the filing of the information. In determining whether or not to request a return of jurisdiction the juvenile court judge shall consider the juvenile's age, legal record, and the seriousness of the charge. When the juvenile court regains jurisdiction under this subsection, the minor shall be returned to the juvenile court for further proceedings, which may include certification.

## ISSUES AND ANALYSIS

In the juvenile court, appellant challenged the constitutionality of subsections (6) and (9) on due process grounds. The juvenile court addressed this claim and determined that section 78–3a–25 could have provided more guidance in the application of the recall provisions, but that the lack of such guidance was not of "constitutional significance." [2] On appeal, appellant makes additional claims that the statutory provisions are unconstitutional on equal protection and separation of powers grounds, and that the juvenile court erred in denying his recall motion.

### I.

We first consider appellant's due process claim.[3] In reviewing any such claim, we must examine a challenged statute for constitutional infirmities both on its face and as applied. *Wells v. Children's Aid Soc'y of Utah,* 681 P.2d 199, 204 (Utah 1984). We also note at the outset that "legislative enactments are accorded a presumption of validity." *State v. Hoffman,* 733 P.2d 502, 505 (Utah 1987). In construing statutes, it is our duty to avoid constitutional infirmities whenever possible. *In re Boyer,* 636 P.2d 1085, 1088 (Utah 1981); *see also Murray City v. Hall,* 663 P.2d 1314, 1317 (Utah 1983) (statutes should not be declared unconstitutional if there is any reasonable basis to place them within the constitutional framework).

Appellant argues that the statutory provisions for direct filing and recall are facially unconstitutional since they lack procedural guidance and provide only a "meaningless ritual." He contends that the provisions do not permit a "fair opportunity to be heard" and are vague, thereby violating procedural due process. *See Hoffman,* 733 P.2d at 505.

Procedural due process entails *"procedural* requirements, notably notice and opportunity to be heard, which must be observed in order to have a valid proceeding affecting life, liberty, or property." *Wells,* 681 P.2d at 204. "[T]he essentials of due process are: 1) the existence of an appropriate tribunal; 2) inquiry into the merits of the question presented; 3) notice of the purpose of the inquiry; 4) opportunity to appear in person or by counsel; 5) fair opportunity to be heard; and 6) judgment rendered in the record thus made." *State in re L.G.W.,* 638 P.2d 527, 528 (Utah 1981). The general test for procedural due process is "fairness." *Wells,* 681 P.2d at 204.

In Utah, the juvenile court has jurisdiction over a child by virtue of the child's

---

**2.** The county attorney opposed appellant's due process claim on the grounds that the juvenile court lacked jurisdiction to consider the constitutional challenge. The county argued that if the jurisdiction of the juvenile court is "divested" and may only be "regained" under the provisions of the recall section, the juvenile court is constrained to hear *only* a motion for recall and has no jurisdiction for any other purpose. The juvenile court acknowledged this argument in its memorandum decision, but determined jurisdiction was proper because the constitutional challenge "was part of the proceeding seeking recall" and involved "a statute which is part of the Juvenile Court Act." We do not consider whether this aspect of the juvenile court ruling was proper because, on appeal, the state does not contest the jurisdiction of the juvenile court to decide the issue.

**3.** As to the scope of due process, appellant has not distinguished the Utah Constitution from the United States Constitution. Article I, sec. 7 of the Utah Constitution provides: "No person shall be deprived of life, liberty or property, without due process of law." Amendment XIV, sec. 1 of the United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." At least for the purposes of this opinion, we will consider the provisions comparable. *See, e.g., State v. Holmes,* 774 P.2d 506, 508 n. 1 (Utah Ct.App.1989).

violation of law or ordinance. Utah Code Ann. § 78–3a–16(1)(a) (Supp.1989). If certain criteria are met and the juvenile court determines that it would be contrary to the "best interests of the child or of the public to retain jurisdiction," the court may "certify" the juvenile to the adult system for criminal prosecution. Utah Code Ann. § 78–3a–25(1) (1987). The juvenile court makes this determination only after a motion by the state to conduct a certification proceeding consisting of a "full investigation and a hearing." Id.; Utah Juv.Ct.R. Prac. & Proc. 7. Jurisdiction is vested in the juvenile court at the commencement of a certification proceeding, then divested upon the transfer of the accused to district court.

A recall proceeding, however, is wholly distinct from a certification proceeding. In a recall proceeding, the juvenile court has already been divested of jurisdiction by the direct filing of an information in district court. Utah Code Ann. § 78–3a–25(6) (1987). Jurisdiction may only vest in the juvenile court upon receipt by the district court of a request for the return of such jurisdiction to the juvenile court. Utah Code Ann. § 78–3a–25(9) (1987). This request may be the result of a "recall proceeding," i.e., a hearing on defendant's motion to "recall" juvenile court jurisdiction, or the result of the juvenile court's own motion. Id. Unlike a certification proceeding, the juvenile court has no jurisdiction over the juvenile defendant at the time a recall proceeding is commenced.

The Utah Supreme Court has previously considered the due process claim of a juvenile certified by the juvenile court to stand trial as an adult. See State in re Clatterbuck, 700 P.2d 1076 (Utah 1985) (certification of juvenile on murder charges). In Clatterbuck, the court agreed that the decision to transfer a juvenile defendant to the adult system was "critically important," requiring the procedural protections established in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Clatterbuck, 700 P.2d at 1079. Those protections consist of an informal hearing, assistance of counsel, access to records, and submission of findings. Kent,

383 U.S. at 561, 86 S.Ct. at 1057. The Utah court examined the certification provision of section 78–3a–25 and found that it "closely follow[ed] Kent's reasoning and suggestions." Clatterbuck, 700 P.2d at 1081. It was ultimately determined that the juvenile was treated fairly, having received the benefit of those procedural protections. Id. at 1079.

■ Unlike the certification subsection of section 78–3a–25, the subsection allowing for the "direct filing" of criminal charges against a juvenile in adult court has not been previously considered in Utah. Our supreme court has recognized, however, that "[a] person sixteen or older who is accused of a felony ... has no right to a certification hearing before being prosecuted as an adult." Burnham v. Hayward, 663 P.2d 65, 67 (Utah 1983). Other jurisdictions have considered challenges to the "direct filing" of criminal charges against juveniles and have found the procedure constitutional, primarily on the grounds of prosecutorial discretion. See, e.g., Cox v. United States, 473 F.2d 334, 336 (4th Cir.1973), cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973) (due process has never been held applicable to the processes of prosecutorial decision-making). See also Woodard v. Wainwright, 556 F.2d 781 (5th Cir.1977); Russell v. Parratt, 543 F.2d 1214 (8th Cir. 1976); United States v. Quinones, 516 F.2d 1309 (1st Cir.1975), cert. denied, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); United States v. Bland, 472 F.2d 1329 (D.C.Cir.1972), cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973); People v. Thorpe, 641 P.2d 935 (Colo.1982) (en banc); Jones v. State, 654 P.2d 1080 (Okla. Crim.App.1982); State v. Berard, 401 A.2d 448 (R.I.1979). Based on this precedent, we are convinced that the direct filing provision of the Utah statute is clearly constitutional.

■ With respect to the recall provision, Oklahoma has examined a comparable procedure and determined it to be constitutional on due process grounds. See State ex rel Coats v. Rakestraw, 610 P.2d 256

(Okla.Crim.App.1980) (involving "reverse certification," i.e., a juvenile is charged as an adult, but is certified for prosecution as a juvenile). In a subsequent case, *Jones v. State,* it was again alleged that reverse certification proceedings did not comply with the due process protections of *Kent. Jones,* 654 P.2d at 1084. The Oklahoma Court of Criminal Appeals held that the *Kent* standard applies only when the juvenile court is vested with original jurisdiction. *Id.*

The Utah statutory scheme for prosecuting juveniles as adults similarly provides for the vesting of jurisdiction in district court. However, we need not determine whether the jurisdictional issue renders *Kent* inapplicable because the *Kent* protections are all afforded under Utah law. Our recall provision, for example, provides for a hearing in juvenile court. Utah Code Ann. § 78–3a–25(9). Other sections of the Juvenile Court Act, such as Utah Code Ann. § 78–3a–35 (Supp.1989), provide for counsel and access to records. In addition, juvenile proceedings are civil in nature under Utah Code Ann. § 78–3a–44(1) (1987), and the rules of civil procedure require the court to make findings. Utah R.Civ.P. 52(a); *see State in re R.N.,* 527 P.2d 1356, 1358 (Utah 1974).

Appellant has thus failed to demonstrate that the statutory provisions for direct filing and recall violate due process standards. Accordingly, we reject appellant's challenge to the facial constitutionality of subsections (6) and (9) of section 78–3a–25.

## II.

Although we have determined that appellant's challenge to the facial constitutionality of the statutory provisions fails, we now determine whether appellant was deprived of due process by the juvenile court's application of the transfer procedure. *See Wells,* 681 P.2d at 204.

■ Our initial determination is whether the juvenile court unconstitutionally applied a standard for recall not delineated in subsections (6) or (9) of the statute. In making its ruling, the juvenile court considered itself guided by the standard for

certification proceedings, "contrary to the best interests of the child or the public," found in section 78–3a–25(1). This standard is reiterated in Utah Code Ann. § 78–3a–39(18)(a) (Supp.1989) as governing all dispositional orders of the juvenile court, and has been held consistent with due process in the context of a certification proceeding. *See Clatterbuck,* 700 P.2d at 1079. In view of these considerations, we conclude that there was no unconstitutional application of this standard.

We also find no constitutional violation in the juvenile court's imposition of a "clear and convincing" standard of proof. Rule 21 of the Utah Juvenile Court Rules of Practice and Procedure provides that unless the court is called upon to decide whether the juvenile violated the law, "the proof required for adjudication shall be by clear and convincing evidence." As the Utah Supreme Court determined in *Clatterbuck,* this standard may be properly borrowed from Rule 21 to provide for the lack of an expressed standard of proof in section 78–3a–25. 700 P.2d at 1079–80. In light of *Clatterbuck* and the fact that appellant was advised from the inception of the proceedings that the clear and convincing standard would be applied, we find no deprivation of due process in this aspect of the juvenile court decision.

■ Our final due process consideration is whether the juvenile court unconstitutionally assigned appellant the burden of going forward. In a certification hearing, the state is the proponent of terminating the juvenile's statutory status as a juvenile. A recall hearing, in contrast, involves no termination of juvenile status, but rather a determination as to whether the juvenile's status as a juvenile under the law should be restored. The appellant, as the proponent of this proposition, must bear the burden of going forward. This principle is consonant with the notion that juvenile proceedings are civil in nature, and that in civil cases the burden rests as a general rule "on the party who substantially asserts the affirmative of the issue." *Lilienthal v. United States,* 97 U.S. 237, 266, 24 L.Ed.

901 (1878); *see also In re Ricky B.*, 43 Md.App. 645, 406 A.2d 690, 691 (1979) (In a "reverse waiver" hearing, the juvenile carries the burden of demonstrating that a waiver should be exercised.). Accordingly, we find no due process violation in assigning the burden of going forward to appellant.

### III.

We turn next to appellant's equal protection and separation of powers claims. Appellant has raised these claims for the first time on appeal. As a general rule, issues raised for the first time on appeal are not properly brought and will not be considered. *Wheeler ex rel. Wheeler v. Mann*, 763 P.2d 758, 761 (Utah 1988); *see also James v. Preston*, 746 P.2d 799, 801 (Utah App.1987). This holds true for constitutional issues as well, unless a liberty interest is at stake. *Pratt v. City Council of Riverton*, 639 P.2d 172, 173–74 (Utah 1981).

"Liberty interest" refers to

not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

We are not convinced that a liberty interest is placed in imminent jeopardy by virtue of a recall proceeding. While the ultimate prospect of incarceration would appear to implicate appellant's liberty interest in "freedom from bodily restraint," the imme-

diate objective of a recall proceeding is the selection of a forum for the adjudication of guilt or innocence. *Cf. In re Gault*, 387 U.S. 1, 12, 87 S.Ct. 1428, 1435, 18 L.Ed.2d 527 (1967) (due process is requisite to the constitutional validity of proceedings in which a juvenile is found to have misbehaved with the consequence that his freedom is curtailed). Only after the selection of a forum is there any judicial inquiry into the juvenile's culpability.

We find further support for this view in the fact that a juvenile has no right to treatment in the juvenile justice system. *State in re Atcheson*, 575 P.2d 181, 184 (Utah 1978). "Since one does not have an inherent right to be prosecuted as a juvenile but that is a privilege granted by the legislature, *the legislature can restrict or qualify the privilege as it sees fit*, so long as there is not involved any arbitrary or discriminatory classification." *Jahnke v. State*, 692 P.2d 911, 929 (Wyo.1984) (emphasis added). As in *Woodard*, 556 F.2d at 785, perhaps the legislature concluded that "the *parens patriae* function of the juvenile system would not work for certain juveniles, or that society demanded greater protection from these offenders than that provided by that system." In any event, "[w]e should not second-guess this conclusion." *Id.*

We therefore decline to consider the constitutional arguments raised by appellant for the first time on appeal.[4]

### IV.

We next discuss appellant's contention that the juvenile court erred in denying his motion to recall juvenile court jurisdiction because the ruling was against the weight of the evidence presented in support of the motion.

---

**4.** Appellant also argues that the statutory provisions unconstitutionally deprive him of the "right to present relevant evidence," citing *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). *Rock* discussed this "right" in the context of due process grounded in the fifth, sixth, and fourteenth amendments to the United States Constitution, and described it as a right of criminal defendants to testify or present

relevant testimony in their own behalf. *Id.* 107 S.Ct. at 2710. Even assuming that this right could be applied in the context of a recall proceeding, appellant did not raise this aspect of his due process claim in the juvenile court, and we decline to consider it. *See also State v. Carter*, 108 Utah Adv.Rep. 12, 12, 776 P.2d 886, 888 (Utah 1989) (appellate courts need not address every issue on appeal).

Our review of this aspect of the juvenile court ruling is governed by Utah R.Civ.P. 52(a), which provides that the findings of the juvenile court will not be set aside unless clearly erroneous. *Accord In re R.L.I.*, 771 P.2d 1068, 1070 (Utah 1989) (applying rule 52(a) to nonjury juvenile court cases involving criminal violations). "Clearly erroneous" means that the findings are either against the clear weight of the evidence or induce a definite and firm conviction that a mistake has been made. *Id.; West Valley City v. Borrego*, 752 P.2d 361, 365 (Utah App.1988).

Section 78–3a–25(9) sets forth three criteria which the juvenile court must consider in its determination to recall jurisdiction: the age of the juvenile, the legal record of the juvenile, and the seriousness of the charge. Although the statute gives no indication as to how detailed an analysis of these factors must be, we agree with the juvenile court that the clear legislative intent was not to afford the juvenile the full scope of inquiry involved in a certification hearing under section 78–3a–25(1). Otherwise, the statute would not have provided that after recall the juvenile court shall conduct further proceedings "which may include certification." Utah Code Ann. § 78–3a–25(9) (1987). Nor do we need to determine what minimum examination of the three factors would be adequate under the statute, because the juvenile court in this case determined that those factors "would be broadly considered to give the juvenile the benefit of a *substantial inquiry* into his motion to recall." (Emphasis added.)

As a result of this inquiry, the juvenile court issued a seven-page memorandum decision outlining its analysis of the three factors, including its factual findings and rationale. It is clear that each of the statutory factors was considered and that this approach sufficiently provided meaningful review. *See Clatterbuck*, 700 P.2d at 1081 ("[O]rders under section 78–3a–25 must contain a sufficiently detailed statement of facts to permit us to determine that a full investigation has been made and that each of the statutory factors has been considered.").

The court below determined that the first two factors, age, and prior record, favored juvenile prosecution, but that the seriousness of the alleged offenses and the lack of judicial control over the length of stay in the juvenile system did not. The court's finding that appellant may be culpable for a premeditated act requiring long-term treatment and confinement does not appear to be against the weight of the evidence or induce a firm conviction that a mistake has been made.[5]

## V.

■ We last examine appellant's contention that the juvenile court abused its discretion in determining that the "lack of court control over the length of stay mitigated against the juvenile remaining in the juvenile justice system." Because this factor is not statutorily enumerated, the appellant claims that the juvenile court misapplied the law. We reject this argument. The length of confinement was merely one aspect of the juvenile court's consideration of the seriousness-of-the-charge factor. Without such an interpretation, the seriousness-of-the-charge factor becomes simply a hollow exercise in confirmation that the alleged offense appears in section 78–3a–25(6). The legislature has already made the determination that certain offenses are serious enough to permit prosecution of juveniles as adults; we conclude that a less analytical approach is neither intended nor warranted.

We also find support for the juvenile court's approach in the case of *State in re R.W.*, 717 P.2d 258 (Utah 1986) (certification of five juveniles on rape charges). There, the defendants argued that the juvenile court misapplied the statutory factors by focusing "on the length of possible incarceration within the juvenile system as a separate factor warranting certification."

---

5. In light of our conclusion regarding the seriousness-of-the-charge factor, we have no occasion here to review the juvenile court's interpretation of the statutory factor of "age" to mean developmental age as opposed to chronological age.

*Id.* at 260. The Utah Supreme Court concluded that this argument was without merit, stating:

> Section 78–3a–25(2)(a) specifically permits consideration of the seriousness of the offense wholly apart from the need to protect the community or rehabilitate the offender. In this statutory context, seriousness is a factor pertinent to punishment only, and length of available incarceration is certainly a legitimate consideration in determining the suitability of punishment. Therefore, under the statute, considerations of punishment alone may warrant certification.

*Id.*

■ Although *State in re R.W.* involved certification and not recall, in this respect we see no distinction between two similar proceedings that require the court to consider two similar factors. Appellant correctly notes that subsection (4) of the certification provision of section 78–3a–25 permits the juvenile court to certify a juvenile upon a finding of "any one or more" of the seven factors to be considered in a certification hearing. The only significance we attach to the omission of such a provision from the recall subsection of the statute is that in specifying only three factors to be considered, there was less likelihood that a finding based on only one of the three factors would be perceived as arbitrary. We thereby conclude that a ruling based solely upon the weight of the seriousness-of-the-charge factor would not constitute an abuse of discretion. *State in re R.W.* also makes clear that there would be no abuse of discretion in framing consideration of the seriousness-of-the-charge factor in terms of the length of confinement.

In view of the foregoing, we hold that the appellant's motion for recall was properly denied.

Affirmed.

BILLINGS and GREENWOOD, JJ., concur.